Strafford,
Feb. 4, 1936.

MABELLE M. COLEMAN & a.

*v.*

SCHOOL DISTRICT OF ROCHESTER & a.

466

*Cooper & Hall,* by brief, for the plaintiffs.

*Guy Smart,* for the defendants, filed no brief.

ALLEN, C. J.   The inquiry relates to the power of school boards in prescribing tests for the eligibility of teachers for nomination and election and in adopting rules for their dismissal.   The existence of the power and the manner of its exercise are both challenged.

Respecting the power, its grant is wholly a matter of legislative discretion.   Contrary to the plaintiffs' assertion, no constitutional issue of personal rights is involved.   No one has a guaranteed or vested right to become or to continue in position as a public school teacher, even subject to regulation.   The legislature, if it saw fit, might enact that teachers should be elected by popular vote or subject to dismissal at pleasure.   The scope of legislative authority in the premises is virtually untrammeled and unhampered.   The constitution recognizing the subject of education as "one of paramount public importance," merely enjoins that it be "cherished, regulated and controlled by the State."   *Farnum's Petition,* 51 N. H. 376, 378, 379; *Wooster* v. *Plymouth,* 62 N. H. 193, 206-208; *State* v. *Jackson,* 71 N. H. 552, 553, 554.   As will hereinafter appear, the courts may not declare acts of the legislature void on the sole issue whether they are "wholesome and reasonable."   The legislature is to judge whether they are for "the benefit and welfare" of the state.   Const., Pt. II, *art.* 5.

The legislation, however, is to be examined to determine the action

taken in granting power. That now in force is to be construed to ascertain what powers a local school board has to ordain qualifications for the teachers of its district and how far it may impose regulations bearing on their conduct. The construction is to be determined in the light of repealed and amended enactments upon the subject.

Until 1895 school boards were to "select and hire suitable and competent teachers." .P. S., c. 92, s. 2. They were governed in their duty by no supervision or established tests of qualification. In that year the law was amended by requiring a certificate of qualification for a candidate to be eligible. The certificate was to be given after a satisfactory examination, to be held by the local board, in the studies to be taught, and upon proof of "good moral character and capacity for government." Laws 1895, c. 50, s. 2. At the same time a law (Laws 1895, c. 49) was passed imposing the duty upon the state superintendent of public instruction to hold examinations of candidates for teaching positions, to test their professional and scholastic abilities. Certificates were to issue to those passing satisfactory examinations and "in other respects" fulfilling the requirements of the superintendent. Local boards were authorized to accept them in lieu of the examinations they conducted, but optionally. In 1899 the option was eliminated, and the acceptance of the state superintendent's certificates by the local boards was required in all cases. Laws 1899, c. 12. Since the state certificates were thus to supplant local certificates, the law had the effect of dispensing with local examinations, except in the possible failure of satisfactory teachers with state certificates to meet the demand.

In 1915 an act "establishing an employment bureau for teachers" was passed. Laws 1915, c. 156. It provided that upon request from local officials the state superintendent should recommend teachers for employment "as they shall appear to be fit and qualified" from a list of registered applicants whose registration was dependent upon proof of "character, qualifications, education, and experience" required by the superintendent.

In 1919 a policy of centralizing the state's educational system under a uniform administration and control was adopted. Laws 1919, c. 106. This act created a state board of education with the "same powers of management, supervision and direction over all public schools in this state as the directors of the ordinary business corporation have over the business of the corporation, except as its powers and duties may be limited by law." (s. 5 (1) ). The board has the

duty to "prescribe the qualifications and duties" of various officers and agents and of "teachers employed in the public schools, the subjects required to be taught and the minimum educational standards for all grades of the public schools." (s. 5 (3) ). The act also requires school boards to elect teachers from nominations presented by the local superintendent of schools. (s. 12).

In an act passed in 1921 to revise and codify the school laws (Laws 1921, c. 85), Part I, devoted to state organization, incorporates the sections of the 1919 act already cited in conferring powers and imposing duties upon the state board. It also contains the inclusions of the earlier acts relating to the examination, registration and certification of teachers. In Part II is adopted the requirement for school boards to elect teachers from the nominations of the local superintendent.

The foregoing legislation shows a consistent, persistent and progressive policy leading to the vesting in the state board of sole authority to determine the qualifications of teachers. No one may reasonably argue that a school board may adopt by-laws lowering the standards set by the state board. While there may be some force in the position that local standards may be raised, the policy of the legislation is not thought to countenance it. Its order that the state board "shall prescribe the qualifications and duties of . . . all . . . teachers employed" makes the board the sole authority, as the language reads. Nothing is found which admits departure therefrom or exception thereto. A certificate from the state board proves eligibility for nomination and election. The local superintendent may refuse to nominate a certified teacher and the local board refuse to elect, but the refusal or declination may not be on the ground of insufficient qualification. The legislature having created a source of authority, the courts may not for reasons regarded by them to be of practical expediency hold a surplus authority to exist elsewhere.

The transition from sole local to sole state authority is shown to be designed from the course of the legislation. The state board is to say when eligibility exists. The local board may not rightfully deny it. If a local board desires to engage teachers with qualifications not required by the state board, its election powers may enable it to thus act, but it may not hold applicants with state certificates ineligible for nomination, or make valid rules barring them from election if nominated.

Qualification denotes a successful test of eligibility. Certain established standards are met. It is enough that they are minimum

standards. On their attainment one is qualified. To require higher unattained standards is to disqualify one having no more than minimum standards. No provision or operation of the law has been pointed out which justifies a local board to disqualify a teacher certified by the state board to be qualified. The state certificate gives the holder eligibility throughout the state. That the raising of standards by local boards may be of infrequent resort and limited to a few districts, is immaterial. If it may be done at all, it may be done generally and to any degree of excellence.

Among the objects for which the state board may expend appropriations for general educational purposes are the following:

"EQUALIZATION. For equalizing educational opportunity and improving the public schools, below college grade, with the definite aim of extending school terms, stimulating local interest and improving, through better instruction, gradation and supervision, all rural schools and schools in sparsely settled localities.

"INSTRUCTING TEACHERS. For preparing teachers for the schools, particularly for rural schools, for encouraging a more nearly universal [sic, uniform] preparation of prospective teachers, and for extending the facilities for the improvement of teachers already in the service." P. L., c. 116, s. 14, III, VI.

These provisions, in promotion of uniform and equal educational advantages and facilities, serve to strengthen the support of a construction of the law exclusively vesting in the state board the power to establish teaching qualifications.

The district's requirement that no married woman shall be nominated or elected to be a teacher is a test of eligibility. It is not a regulation. It is not a rule of conduct to be observed and it is not a rule prescribing the consequences of conduct. It is a declaration of an essential for the engagement of teachers. It bars persons having a certain status. As a disqualification it is an invasion of the state board's functions. As an *ultra vires* order, it is void.

While it is thus held that local boards may not adopt rules of qualifications for teachers, they have, in addition to their rights in respect to election, rights and duties of administrative control. "The school board may, subject to the supervision of the state board, prescribe regulations for ... the management ... of, the schools; and such regulations, ... shall be binding upon ... teachers." P. L., c. 117, s. 13. "The school board may dismiss any teacher found by them to be immoral or incompetent, or one who shall not conform to regulations prescribed." *Ib., s.* 11. The regulations are those of the

local board, as is shown by the antecedent legislation. (P. S., *c.* 92, *s.* 3; Laws 1895, *c.* 51).

The requirement that the state board shall supervise local regulations is not meaningless. It was inserted in the 1921 codification of the school laws, and is to be correlated with the law (P. L., *c.* 116, *s.* 8) making it mandatory for the state board to prescribe the duties of teachers. To prescribe is to state and define. Supervision implies attention and action. And the supervision, for regulations to be effective, implies their approval. The enacted parallel of the "powers of management, supervision and direction" of the business of a private corporation which belong to its directors, is applicable. Such duties as the state board may demand of teachers may not be affected by local regulations. Supervision of the regulations is called for to avoid conflict of authority, as well as "to secure the efficient administration" of the schools (P. L., *c.* 116, *s.* 5), state rules and regulations for which are to be observed by local boards (*Ib.*).

It would be an anomalous and undesirable adjustment to hold the local regulations valid until supervision, the outcome of which might be to annul them. A regulation not approved upon supervision is not enforceable. The legislation is not construed to plan a temporary validity for it, to become permanent if upon supervision it is approved. It is intended that if it is valid, it shall retain its merit. To secure this result, all local regulations must receive specific approval from the state board, acting in its supervisory authority, before they can be effective.

The case does not show whether the district's regulations have been subjected to supervision. And there is no occasion to invoke any presumption of validity. The parties desire decision of the issues upon their merits. The trial court may readily find whether there has been in fact exercised supervision. If there has been none, the regulation for dismissal is ineffective.

If exercised supervision is found, the question arises whether the regulation may be held void as arbitrary and unreasonable. The school board has the duty to base all its official acts and conduct upon the welfare of the schools and in the interests of local education. Economy in the management and conduct of the schools is a proper consideration, but economy in other branches of government is not. If the regulation was adopted because the board thought it would help to meet general demands in economic and social conditions, the motive was improper. To dismiss a teacher in order to make room for another thought to be more in need of employment, and thereby also

to relieve the strain on public relief, could not advance educational welfare. The tendency would be necessarily to impair it.

But if the evidence is convincing to show an improper motive as the inducement of the regulation, the finding would be immaterial. If the regulation was arbitrarily adopted, it was not for that reason an arbitrary one. Although the board's motive was indefensible if it did not act with the motive to serve the cause of educational welfare and efficiency, the difference between proper and improper motive does not determine the validity of legislation, as a general proposition. The passage of public ordinances, by-laws, rules and regulations is a form of enacting legislation. The general rule is that if a law is valid when its maker is actuated by right motives, it is equally so when he is not. "The legislature may constitutionally authorize city councils to legislate in respect to local matters. *State* v. *Noyes*, 30 N. H. 279, 293. When they are exercising this function they are the legislative department of the state, so far as the matters in regard to which they may legislate are concerned; and the fact that their acts in regard to such matters as come within the scope of their authority are the laws of the state brings them within the rule which exempts the legislature from the control of the court." *Sherburne* v. *Portsmouth*, 72 N. H. 539, 542. See also 12 C. J. 891, and cases cited; 6 R. C. L. Const. Law, *s.* 110.

Whether a rule making a woman teacher's marriage a disqualification or automatic cause of dismissal can be considered a reasonable service to the cause of education, is a question productive of disagreement in the courts of other jurisdictions. The rule has been sustained in England (*Short* v. *Corporation*, [1926] 1 Ch. 66; *Fennell* v. *Corporation*, [1926] 1 Ch. 641), in Massachusetts (*Sheldon* v. *District*, 276 Mass. 230), in Minnesota (*Backie* v. *School District*, 186 Minn. 38), and in Oregon (*Hendryx* v. *District*, 148 Or. 83). But in analysis the question relates to legislative policy. It is only ordinances "other than those passed by virtue of an express grant or power" that "must be reasonable and not oppressive" and not "in contravention of a common right." *Lane* v. *Concord*, 70 N. H. 485, 488. Local school boards have received such power to enact regulations subject to the state board's supervision. The school board acted within its authority in passing the regulation relating to dismissal if the regulation received state supervision. The rule would be valid if enacted by the legislature, and it is equally so if the board adopted it under authority of the legislature with state board approval. The rule being generally applicable and affecting no private guaranteed rights,

the courts are without power to pass upon its wisdom, fairness, or reasonableness. Whether it is "wholesome and reasonable" is for the legislature, by itself or by its delegated authority, alone to say. Any educational policy or rule declared by the legislature or promulgated under authority delegated by it may not be reversed or vacated judicially on the ground that it must be regarded as impolitic. The right to teach depends upon the legislative will, and its grant or denial is uncontrolled except by its own sense of duty.

"The rule of law upon this subject appears to be, that, except where the constitution has imposed limits upon the legislative power, it must be considered as practically absolute, whether it operate according to natural justice or not in any particular case. The courts are not the guardians of the rights of the people of the State, except as those rights are secured by some constitutional provision which comes within the judicial cognizance. The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being *prima facie* valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them." Cooley, Const. Lim., (4th *ed.*) 204.

Whether the procedure here employed of a petition for a declaratory judgment is appropriate or not, has not been considered. No objection to it has been made. The rule that if other procedure is available, resort should be had to it (*Lisbon District* v. *Lisbon*, 85 N. H. 173, 174; *Baker* v. *Goodale*, 85 N. H. 561), is not disregarded. It is immaterial for decision of the questions presented, and amendment or modification of the petition is not essential to give jurisdiction.

*Case discharged.*

All concurred.