Hillsborough,
No. 5335.

### ROLAND J. LEVESQUE & a.

*v.*

### HUDSON & a.

Argued May 4, 1965.
Decided October 29, 1965.

*Lesieur & Janelle* (*Mr. Leo R. Lesieur* orally), for the plaintiffs.

*Smith, Welts & Robertson* (*Mr. Douglas D. Robertson* orally), for the defendant town of Hudson.

*Hamblett, Kerrigan & Hamblett* (*Mr. Joseph M. Kerrigan* orally), for the defendants Leonard A. and Claire F. Smith.

BLANDIN, J. The permit allowed the erection and use in a Class A residence district of a bank building, octagonal in shape, with the opposite sides approximately 33 feet apart, together with twelve parking stalls on a lot owned by the defendants Smith, which was approximately 108' x 120' x 125' x 67'. The Court made the following findings of fact:

"The Nashua Trust Company holds an option to lease the premises, and, if the variance is finally approved, it intends to exercise the option, construct the building and parking stalls, and use the premises for branch banking. The Trust Company is to pay the expenses of the proceedings to procure a variance, if the variance is denied, and it has been actively engaged in obtaining approval.

"The lot in question is part of a larger parcel owned by the Smiths. The entire parcel is shaped, generally speaking, like a right triangle, and is bounded northerly on the base, which is about 180', by Highland Avenue, a local street, southeasterly along its hypotenuse, which is about 418', by Derry Street, being part of State Route 102, and on the westerly side, which is about 363', by Baker Street, a local street. There is situate, on the

northerly end of this parcel, a seven apartment house, owned and operated by the Smiths, for which they previously obtained a variance. On the southerly end of the parcel there is a building, hereinafter referred to as the town office building, used by one John Baker for his office as Town Clerk and Town Tax Collector and to carry on an insurance business; the Smiths lease out this lot, but do not own the building. The parcel is undeveloped between the apartment house and the town office building; the lot in question abuts the town office building lot . . . .

"The Hudson Zoning Ordinance provides for an A residential district, a B commercial district, a C industrial district, and a D rural district. Banking is not permitted in the A district, but is in the other districts . . . .

"In the instant case the Smiths wish to lease part of their property for branch banking use. This would make the use of their entire parcel more profitable to them than any permitted use or uses. If they cannot carry out their wish this will constitute hardship. This gives rise to the question whether such hardship would be unnecessary hardship. If the granting of a permit would not injuriously affect any public or private rights, then the refusal to grant one would constitute unnecessary hardship, otherwise it would not.

"One factor to be taken into consideration on this issue is the nature of the properties in the neighborhood. In addition to one and two family dwellings, which are permitted in the A district, there is a United States post office, for which a variance was granted, real estate office, film transportation company, market, gas station, the town office building, and multiple dwellings, none of which are permitted in the A district, but all of which are permitted uses in the B commercial district. The southerly tip of the Smith parcel is within about 80' of a commercial district. Derry Street, which bounds the parcel on the southeast, is a busy thoroughfare, as is Ferry Street, which runs east and west about 100' south of the parcel.

"In addition, it is findable that an additional bank is needed in Hudson, that the location would be a convenient one for people using the bank, that it would relieve traffic congestion in the commercial area on Ferry Street, and that the branch bank would materially add to the esthetic and monetary value of the area taken as a whole.

"It is findable, on all the evidence, that the variance would

be beneficial to, and not contrary to, the public interest.

"It is also findable, on all the evidence, that the variance would not cause any diminution in value of surrounding properties.

"Consequently, since it is findable that no public or private rights would be injuriously affected by the proposed use, it is also findable that the hardship which would result to the Smiths if they cannot lease the lot for branch banking, is unnecessary hardship.

"It is further findable that the use would not be contrary to the spirit of the ordinance, and by granting the variance substantial justice will be done.

"It is therefore found and ruled that reasonable men could find that the essential requisite for a variance exists.

"The plaintiff further claims that the decision of the Board should be set aside because the Chairman was disqualified. Although the basis for this claim is not specified in the plaintiff's pleadings, it apparently is based on an occurrence after the hearing. The day after the hearing, and before the Board made its decision, the Chairman, at the request of the Nashua Trust Company, made prior to the hearing, went to Concord with certain bank representatives, and spoke at a hearing before the State Board of Trust Company Incorporation, in favor of granting permission to the Nashua Trust Company to operate a branch bank in Hudson . . .

"It does not appear that the alleged misconduct of the Chairman produced, or helped to produce, the decision. See *Caldwell* v. *Yeatman,* 91 N. H. 150.

"Consequently, this claim does not furnish a basis for setting aside the decision.

"The plaintiff further claims, through his requests, that three members of the Board discussed the case with the attorneys for the Smiths and were therefore disqualified. Apparently this claim has reference to the conference on October 11th which the Chairman and Clerk had with certain bank representatives, in accordance with an agreement among the Board members, to determine whether the Bank would rather undertake to have the area rezoned by a special town meeting than obtain a decision from the Board on a variance . . . Here again, for one thing, it does not appear that the alleged misconduct produced, or helped to produce, the decision. This claim of alleged misconduct does not afford a basis for setting the decision aside.

"In conclusion, it is found and ruled that the decision of the

Board was not unlawful or unreasonable."

The plaintiffs first attack the finding that to deny the variance would inflict hardship on the defendants Smith and that it would be an unnecessary hardship. *Bouley* v. *Nashua,* 106 N. H. 79; *Fortuna* v. *Zoning Board of Manchester,* 95 N. H. 211. In regard to this issue there was evidence that the Smith lot for residential purposes had very little value; but that for bank purposes the value of the portion of the lot to be leased was substantial. The Court made a clearly sustainable finding that the bank intended to exercise its option to lease the property. This and other factual differences distinguish the present case from *Conery* v. *Nashua,* 103 N. H. 16, relied upon by the plaintiffs.

As to whether the hardship was unnecessary, there were conflicting and contradictory statements which were for the board of adjustment to resolve. See *Goodwin* v. *Johnson,* 105 N. H. 294. There were also sustainable findings, among others, that the district is already largely commercial, in fact it abuts one of the main business areas of Hudson, and that the appearance of the proposed bank building is to be such that it would improve the general looks of the area and increase values there as a whole. It would also relieve traffic congestion on Ferry Street, which is a part of busy Route 102, and would furnish the community with a needed and convenient facility. The depreciation in the value of immediately surrounding property would not be significant. *Bouley* v. *Nashua, supra.* See *Suprenant* v. *Nashua,* 101 N. H. 43. In this situation, these and subsequent findings that literal enforcement of the ordinance would result in unnecessary hardship, and that granting the variance would result in substantial justice and would not be contrary to the spirit of the ordinance, were supported by the record. We are not persuaded on a balance of probabilities that these findings are unlawful or unreasonable. RSA 31:78. The plaintiffs' exceptions to the above findings including the Court's conclusion that the hardship would be unnecessary are therefore overruled. *Bouley* v. *Nashua, supra; Rockingham Hotel Co.* v. *North Hampton,* 101 N. H. 441, 442.

It is strenuously argued that the decision should be set aside because the chairman of the Hudson zoning board traveled to Concord the day after the hearing, and before the board made its decision, with members of the bank staff and its lawyer. He testified there before the Bank Commissioner that a branch bank was needed in Hudson. These actions, the plaintiffs say, disqualified him as a matter of law to sit under RSA 31:73. See

also, RSA 500:30. Section 73, *supra,* provides in substance that no member of a board shall sit who would be disqualified to act as a juror upon the same matter.

The plaintiffs' argument overlooks the fact that the vital issue before the zoning board was not whether a branch bank was desirable in Hudson. The issue was whether a permit should be given to permit the building to be erected on the Smith lot. Chairman Buxton testified that he appeared at the hearing in Concord in his individual capacity and only to substantiate the fact that a bank was needed. He said that he never discussed the question of the disputed variance on this trip, and in his testimony before the Bank Commissioner he made no reference to the Smith or to any specific lot as being the proper place to locate the bank. The Trial Court, which heard and saw this witness, found that no alleged misconduct on his part "produced, or helped to produce, a decision," and that the hearing before the Hudson board was not rendered unfair. *Caldwell* v. *Yeatman,* 91 N. H. 150.

In the face of these findings, we cannot say that the chairman was disqualified as a matter of law under RSA 31:73 or that it conclusively appears that the hearing was rendered unfair so that the board's decision should be set aside. *Beckley* v. *Alexander,* 77 N. H. 255, 256; *Cloutier* v. *Charland,* 100 N. H. 63, 64.

With reference to the alleged misconduct of the members of the board in their discussion with attorneys for the Smiths, as set forth in the findings of the Court, the plaintiffs are again faced with the fact that the Court's conclusion that the alleged misconduct did not affect the result reached by the board is sustainable. No basis therefore exists for setting aside the decision on the grounds that the members were disqualified as a matter of law under RSA 31:73 or that the hearing was rendered unfair. *Caldwell* v. *Yeatman, supra; Cloutier* v. *Charland, supra.*

Exceptions by the plaintiffs to the admission of a plan of the zoned area on the grounds that it would prejudice the Trial Court do not present a serious problem. Not only do we fail to see any reason why this exhibit should have prejudiced the Court, but in addition RSA 31:82 provides that technical rules as to the admission of evidence are not to prevail in such hearings. The plaintiffs therefore take nothing by this exception.

The final objection raised is that the Court's granting the defendant town of Hudson's request No. 10 is inconsistent with other findings.

The Court did not base its decision upon the granting of request No. 10, but upon other grounds, as his findings and rulings demonstrate. It therefore appears that the plaintiffs were not harmed in any event, and no cause exists to disturb the Court's decree. *Richardson* v. *Railroad,* 80 N. H. 370, 374.

The record disclosing that the trial was free from error, the order is

*Decree affirmed.*

All concurred.