Hillsborough
No. 6634

ELLIOT CARTER & *a.*

v.

CITY OF NASHUA & *a.*

July 31, 1973

*Leo R. Lesieur* and *Hamblett, Kerrigan, LaTourette & Lopez* ( *Mr. Joseph M. Kerrigan* orally) for the plaintiffs.

*H. Philip Howorth,* city corporation counsel, by brief and orally, for the city of Nashua.

*Devine, Millimet, Stahl & Branch* and *Robert A. Backus* and *Silas Little III ( Mr. Backus* orally) for J. Kendall Bancroft, Yankee Greyhound Racing, Inc., and Joseph Carney, parties in interest.

PER CURIAM. Appeal to the superior court under RSA 31:74-87 by approximately 700 plaintiffs from a 3-2 decision of the Nashua Zoning Board of Adjustment granting, to the defendants J. Kendall Bancroft, owner, and Yankee Greyhound Racing, Inc., by Joseph Carney, option holder, a variance of the use regulations in

a light industrial district for the purpose of operating a track for dog races under the supervision of the State greyhound racing commission. RSA ch. 284 (Supp. 1972).

Prior to trial, 29 additional citizens of Nashua residing in the vicinity of the proposed dog track moved to be joined as plaintiffs. The Trial Court (*Dunfey,* J.) took their motion under advisement as well as defendants' motion that the appeal be dismissed because the original plaintiffs did not come within the terms of RSA 31:74-77. Hearing, with a view, resulted in a decree dismissing the appeal. Exceptions of the parties to the admission and exclusion of evidence, to the court's findings and rulings, to the denial of their respective motions and plaintiffs' exception to the decree were reserved and transferred.

On April 4, 1972, the Yankee Greyhound Racing, Inc., and J. Kendall Bancroft, filed a request with the Nashua Zoning Board of Adjustment for a variance from the light industrial use regulations which governed the use of the 17 acres situated in Nashua of a slightly less than 30-acre tract located in both New Hampshire and Massachusetts. The use sought was the operation of a track for pari-mutuel dog races for which a license was obtained from the greyhound racing commission. RSA 284:16-a (Supp. 1972). According to the plans submitted, Yankee was to erect on the Nashua land the track with the structures necessary for its operation and a parking facility for its employees. All parking for patrons, between 4000 to 5000 cars, was to be on that part of the tract of land situated in Massachusetts, and, if needed, on a tract adjoining it to the south.

The land in these proceedings located in New Hampshire is bounded on the west by the Daniel Webster Highway South along which there is a strip zoned general business. In Massachusetts the west boundary is Middlesex Road in Tyngsboro. On the east the whole tract is bounded by the Boston and Maine Railroad right of way along the Merrimack River. The majority of the properties in the light industrial zone along the Daniel Webster Highway are mostly all occupied by business and other commercial enterprises as are those on the opposite side of the road. The Bancroft

lot involved here is the most southern of a light industrial zone which extends some 7300 feet to the north from the State line. The Massachusetts portion is zoned "light commercial".

On April 10, 1972, notice was given by the clerk of the zoning board that a public hearing was to be held on April 25, 1972, to consider, among other matters, the defendants' application "requesting a variation of the use regulations in a Light Industrial District for the purpose of operating a Dog Tract as per plan." It is not disputed that this notice was in compliance with the requirements of Revised Ordinances of Nashua § 7874 (1968). It provides that notice of a meeting shall be given to the abutters and published in a local newspaper at least 72 hours before the date and time of the meeting.

From the minutes received in evidence the trial court found that "the public hearing [April 25, 1972] was conducted by the board in a very thorough and open fashion. The purpose of the meeting was never in doubt. Numerous proponents and opponents had their say. Petitions and letters were welcomed and received prior to, during and after that meeting was concluded. Most, if not all, of the factual issues now raised on appeal, whether they relate to traffic congestion, diminution in value of surrounding properties, police enforcement problems, the overriding matter of public interest and the like were aired at that time." The board voted to "postpone decision to the May meeting with request to be sent to the proponents for a written statement as to how they propose to solve anticipated problems with traffic on Daniel Webster (south)."

Minutes were also submitted in evidence of a "Public Meeting of the Zoning Board of Adjustment . . . held on Tuesday, May 9, 1972 at 7:00 P.M. in the Auditorium of the City Hall." As to this meeting the court found as follows: "The May 9, 1972 meeting was variously labeled as an executive session in notices sent to the zoning board members and alternates as well as a public meeting in still other notices sent by mail . . . In any event, notice of this meeting was contained on the front page of a lead article appearing in the May 8, 1972 edition of the Nashua Telegraph, in which

the time, place and sole purpose, together with the fact of it being a 'public meeting' was set forth. . . . In addition, a public notice was posted by Brother Millimet, counsel for Yankee Greyhound, at city hall and the probate courtroom at least 24 hours in advance of the meeting. This notice also noted the time, sole purpose, and the fact the meeting was open to the public and was signed by Mr. Palmer, chairman of the board of adjustment.

"The meeting was held, and the public was allowed to attend. Members of the board, the general public, as well as Mayor Sullivan and others stated their respective positions as did representatives of Yankee Greyhound. Mr. Robert Allard, Chairman of the State Greyhound Commission, also appeared and spoke in behalf of the . . . Commission. Many citizens once again were permitted to register their opposition together with the reasons for it. The main reasons again centered around traffic controls, the purpose [for which] the meeting was held. However, citizens were permitted to enumerate various and other sundry reasons for their opposition. . . .

"It is further found and ruled that the public had an opportunity to make recommendations and suggestions relative to various agreements, proposals and stipulations, together with conditions regarding traffic controls, security arrangements and the like at this May 9, 1972 hearing as was the case at the public hearing of April 25, 1972. In the court's opinion, this meeting although not necessarily mandatory, involved a regurgitation of matters propounded during the April 25, 1972 hearing, with some refinements in view of the board's studies in the interim period."

The zoning board held a meeting on May 18, 1972, at which the only item of business was a vote to retain counsel for lack of a city solicitor. On May 26, 1972, the board met privately with hired counsel to discuss the legal aspects of a memorandum of law submitted by counsel for Yankee. The court found that these meetings "whether characterized as conferences, planning, review or work sessions are not decisive of the legal issues raised with respect to notice and the public's right to know." We interpret this as a ruling that compliance with the notice provisions was not required

or that the failure to comply has no legal consequences under the facts and circumstances of this case. We hold this to be correct and that the meetings of the board with its counsel on June 5, 1972, and prior to its executive meeting of June 6, 1972, relating to proposed conditions to be imposed if a variance was granted, are in the same category. The record does not show that new information, evidence or testimony was received at these meetings or that any final action on the variance was taken by the board. *Selkowe v. Bean,* 109 N.H. 247, 249 A.2d 35 (1968); 56 Am. Jur. 2d *Municipal Corporations* § 161 (1971).

The final meeting of the board was an executive session held on June 6, 1972, after their consultation with counsel previously mentioned. The minutes of the meeting read as follows: "After considering all the evidence submitted by the petitioners and by those attending the Public Hearings; and further, applying the tests set forth in the N. H. Statutes, case decisions and the ordinances of the City of Nashua; a motion to grant said petition, subject to stipulations agreed upon and incorporated herewith by reference was made by Donald Price. The motion was seconded by Romeo Marquis". The names of the three members in favor and of the two against were recorded. The meeting was then adjourned. The board then announced the result to persons in attendance at the meeting place evidently gathered there as a result of a newspaper item that the board was to meet at city hall at 8:00 p.m. to review the dog track issue.

The first issue raised by the plaintiffs is that the failure of the board of adjustment to comply with the provisions of the statutes and of the zoning ordinance as to notice and openness of their meetings vitiated the granting of the variance. *The Revised Ordinances of Nashua - 1968* require that notice shall be given by publication in a newspaper at least 72 hours before the date and time of the meeting. § 7874 (c). RSA 91-A:2 (Supp. 1972) provides that a notice of the time and place of meeting shall be posted in two appropriate public places or shall be printed in a newspaper of general circulation at least twenty-four hours prior to the meeting. Both RSA 31:68 and RSA ch. 91-A as well as the city ordinances (§ 7872) provide

that the meetings be open to the public. The trial court ruled that the meetings of April 25 (the first hearing), May 9, and June 6, 1972 (when the vote was taken) are the only meetings to which these provisions apply. We have already indicated that we are of the same opinion.

Plaintiffs properly contend that lack of compliance with these requirements for notice and hearing would deprive the board of its jurisdiction to grant a variance. 2 A. Rathkopf, The Law of Zoning · and Planning ch. 38 (1972); 3 R. Anderson, American Law of Zoning 16.17, at 199-200 (1968); *see Lane v. Selectmen of Great Barrington,* 352 Mass. 523, 226 N.E.2d 238 (1967); *Radick v. Zoning Bd. of Review,* 83 R.I. 392, 117 A.2d 84 (1955), *Lunt v. Zoning Bd.,* 150 Conn. 532, 191 A.2d 553 (1963). The fundamental purpose of these requirements is to advise all affected parties of their opportunity to be heard in public meeting and to be apprised of the relief sought. 1 C. Antieau, Municipal Corporations § 7.58 (1968); *see Bois v. Portsmouth,* 107 N.H. 523, 526, 226 A.2d 99, 105 (1967).

There is no question on the record that the April 25, 1972 meeting complied with all the requirements of notice and openness. Plaintiffs make no complaint that the meeting was not conducted in a fair manner with opportunity given to everyone to be heard. The trial court properly found and ruled that this "meeting and hearing more than satisfied all legal requirements, whether statutory or otherwise." Consequently the board was vested with jurisdiction to act on the subject matter of the variance sought by the defendants. Plaintiffs have made no claim, and properly so, that they were lawfully entitled to have the zoning board hold subsequent public meetings to receive additional evidence before rendering a decision which was postponed until a later meeting.

Turning to the May 9, 1972 meeting, the court properly found and ruled that the provisions of RSA 91-A:2 (Supp. 1972), the right to know law, so called, were complied with. It found that counsel for Yankee posted the required notices at city hall and the county court house

at least 24 hours in advance of the meeting. These were signed and authorized by the chairman of the zoning board. We hold that this ministerial act could properly be performed by counsel and complied with the statutory requirements. *Cullum v. Board of Educ.*, 15 N.J. 285, 104 A.2d 641 (1954). It is to be noted that the news item to the same effect appearing on the front page of the May 8, 1972 edition of the *Nashua Telegraph* necessarily amplified the informational value of these posted notices. The meeting was held and the plaintiffs were at liberty to attend in person or by counsel or choose to stay away. *See id.* at 292, 104 A.2d at 644.

The court found that it was in fact a public meeting at which the general public, city and State officials and many citizens were permitted to speak and register their opinions for or against the variance. The court found that the meeting, "although not necessarily mandatory, involved a regurgitation of matters propounded during the April 25, 1972 hearing with some refinements in view of the board's studies in the interim period." It also found that it was a fair and just course taken by the board. *Cf. Colonial Beacon Oil Co. v. Zoning Bd. of Appeals,* 128 Conn. 351, 23 A.2d 151 (1941). The trial court could properly find on all the evidence that the plaintiffs failed to show that they were prejudiced by the holding of the meeting. *See Hardiman v. Dover,* 111 N.H. 377, 380, 284 A.2d 905, 907 (1971). The board's failure to give the 72-hour notice of the meeting required by the ordinance was not sufficient to affect its jurisdiction over the matter which it acquired by its compliance with all notice requirements for the April 25, 1972 meeting. *See R.A. Vachon & Son, Inc. v. Concord,* 112 N.H. 107, 111-12, 289 A.2d 646, 649 (1972).

Lastly we consider the executive meeting held by the board on June 6, 1972, when the vote granting the variance with conditions was taken by the board. None of the required notices was given nor was the meeting open to the public. However the vote was taken and recorded as required by RSA 31:68 and section

7872 of the city ordinances. It was also immediately announced to members of the public who had gathered at city hall as a result of an item in the local paper published on June 3, 1972, that the board was to meet Tuesday, January 6, 1972, at 8, in the city hall to review the dog track issue.

The trial court properly found and ruled that the taking of the vote by the board in executive session was a violation of RSA ch. 91-A (Supp. 1972). *Herron v. Northwood*, 111 N.H. 324, 282 A.2d 661 (1971). However, the trial court also found that "there is not one scintilla of evidence that the board practised any deceit nor that they set out to conceal new or other information or evidence. The record reeks with evidence to the contrary." The court also found that under the circumstances the violation of the "right to know law" did not adversely affect the rights of the plaintiffs or of other citizens. *Hardiman v. Dover*, 111 N.H. 377, 284 A.2d 905 (1971). The court found and ruled on the evidence that the violation on all of the facts presented was not one which calls for the imposition of a penalty invalidating the board's actions, doings or ultimate vote.

The main purpose of statutes such as RSA ch. 91-A (Supp. 1972) providing for proceedings to be open to the public and that records thereof be accessible to it is based on the theory that public knowledge of the considerations upon which governmental action is based and of the decisions taken is essential to the democratic process. Note, *Open Meeting Statutes*, 75 Harv. L. Rev. 1199, 1202 (1962). RSA 91-A:7 (Supp. 1972) provides that any person aggrieved by its violation may petition the superior court for injunctive relief. Laws 1973, ch. 113, § 7 provides that any body or agency which, in violation of the provisions of this chapter (RSA ch. 93-A) refuses to provide a public document or refuses access to a public proceeding shall be liable for reasonable attorney's fees and costs incurred to secure compliance. It contains no specific provision providing for the invalidation of any action taken at a meeting held in violation of the statute.

This court has stated in *Herron v. Northwood*, 111 N.H. 324,

326, 282 A.2d 661, 663 (1971), that the statute must be interpreted to effectuate its purpose. It also recognized "that a public body might have to pay the heavy practical penalty of having its action invalidated for a violation of the statute." *Hardiman v. Dover,* 111 N.H. 377, 380, 284 A.2d 905, 907 (1971). This admonition carried the corollary "that the issue must be promptly and properly raised below, especially where it does not appear that the alleged violation was obvious, intentional, or prejudicial." *Id.* The evident purpose of the requirement for prompt action to be taken before the board involved is to give it an opportunity to take remedial action. *See Merriam v. Salem,* 112 N.H. 267, 293 A.2d 596 (1972); *Bourassa v. Keene,* 108 N.H. 261, 234 A.2d 112 (1967). There is no specific statutory provision that any official determination made by vote at a meeting held in violation of RSA ch. 91-A (Supp. 1972) shall be voidable in a court proceeding. *See* Note, 75 Harv. L. Rev. 1199, 1211 (1962). This absence coupled with the trial court's finding that the violation was inadvertent and did not adversely affect the rights of the plaintiffs or the public leads us to sustain the conclusion of that court that to nullify or vitiate the board's vote on the facts and surrounding circumstances of this case would be to extend the provisions of the statute beyond their intended purposes. *See Elmer v. Board of Zoning Adjustment,* 343 Mass. 24, 176 N.E.2d 16 (1961); Annot., 38 A.L.R.3d 1071 (1971).

The plaintiffs also contend that the stipulations attached to the granting of the variance are ineffective and illegal. They were referred to by the board as "terms and conditions" and were incorporated with the variance by reference. Most of them impose upon the use of the land made under the variance certain obligations with regard to the cost of police needed to control traffic, and of changes in certain highways under the control of the city which may be required to handle the increase in traffic generated by the operation of the track. Their performance by the user of the land is to be guaranteed by a $250,000 surety bond.

There is no doubt that the board has authority to attach reasonable conditions to the granting of the variance. *Vlahos Realty Co. v. Little Boar's Head District,* 101 N.H. 460, 146

A.2d 257 (1958); *New London v. Leskiewicz,* 110 N.H. 462, 272 A.2d 856 (1970); 2 A. Rathkopf, The Law of Zoning and Planning 49-1 (1972); *see Wilson v. Planning and Zoning Comm'n,* 161 Conn. 19, 291 A.2d 230 (1971). Plaintiffs do not question the reasonableness of the conditions as such but claim that they are ineffective and illegal.

The board is not required to anticipate that the grantee of the variance will later violate the zoning ordinance by failing to use the land in accordance with the terms imposed on the variance when granted. *Armstrong v. Zoning Bd. of Appeals,* 158 Conn. 158, 257 A.2d 799 (1969). Nor is the board required to assume that public officials will not perform their duty of assuring that required changes contemplated by the conditions imposed on the variance will be effectuated if needed. *Luery v. Zoning Bd.,* 150 Conn. 136, 142, 187 A.2d 247, 250 (1962). However, if violations of the conditions of the variance should occur, proceedings could be instituted to restrain or abate them or to prevent the use of the premises in a manner contrary to the terms and conditions imposed by the board. RSA 31:88; Rev. Ords. of Nashua §§ 7901, 7902 (1968); *Vlahos Realty Co. v. Little Boar's Head District,* 101 N.H. 460, 464, 146 A.2d 257, 260 (1958); 2 A. Rathkopf, The Law of Zoning and Planning 49-15 (1972).

Plaintiffs claim that the board lacked power to grant a variance in this case because of its magnitude and impact. This court has taken the position fairly early in the history of zoning in this State that the power of the board to grant variances is not limited to slight variances. "No such limitation upon the Board's power to allow variances is expressed in the statute, and for us to read such a limitation into the law would constitute a flagrant case of judicial legislation." *Fortuna v. Zoning Board of Manchester,* 95 N.H. 211, 213, 60 A.2d 133, 135 (1948); *see DeSimone v. Greater Englewood Housing Corp. No. 1,* 56 N.J. 428, 443, 267 A.2d 31, 39 (1970). We hold that the granting of the variance was within the authority of the board and that the conditions attached thereto were not ineffective.

The plaintiffs also contend that there was insufficient evidence of unnecessary hardship to the owner to warrant the grant of the variance. Under RSA 31:78 they have the burden

of proving that, resolving all doubts in the evidence in favor of the board's determination, the trial court could not reasonably find on the balance of probabilities that the applicants' evidence met the legal requirements for the issuance of the variance and that the trial court could not find that the board's decision was not unjust or unreasonable or illegal. *Bois v. Manchester,* 113 N.H. 339, 306 A.2d 778 (1973); *Vannah v. Bedford,* 111 N.H. 105, 276 A.2d 253 (1971).

There is no doubt that the board was authorized to grant a "variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done." RSA 31:72 III. "An unnecessary hardship is one 'suffered by the defendant as the result of the interference with its right to use its property as it sees fit, although no public or private rights are injuriously affected thereby'". *Vannah v. Bedford,* 111 N.H. 105, 111, 276 A.2d 253, 258 (1971). Financial hardship in and of itself does not warrant a variance. *Bouley v. Nashua,* 106 N.H. 79, 83, 205 A.2d 38, 40 (1964). However, financial hardship which becomes unduly oppressive because of conditions of the particular property which distinguish it from other properties similarly restricted can constitute an unnecessary hardship. If the variance sought in such a case would not adversely affect the public interest and the spirit of the ordinance will be observed and justice done, it can be granted by the board. *Bouley v. Nashua supra; Levesque v. Hudson,* 106 N.H. 470, 214 A.2d 553 (1965); *Bois v. Manchester,* 113 N.H. 339, 306 A.2d 778 (1973); *see Appeal of Bilotta,* 440 Pa. 105, 270 A.2d 619 (1970).

The trial court found "that special conditions have and continue to exist with respect to the subject property. There has been a definite lag in occupying the property in the light industrial district for permitted uses . . . [and] this will more probably than otherwise be perpetuated indefinitely for the reasons among others, that 12 acres of the 29 acres is located in the Commonwealth of Massachusetts. It is not feasible or practical to break up the parcel. The tax structure in Massachusetts has made sale of the 12 acres together with

the 17 acres not probable. The property tax situation controlling disposition of the 12 acres situated in Massachusetts together with the 17 acres situated in New Hampshire is such that a sale of the parcel is, at best, unlikely in terms of securing the fair market value of the entire tract." There was also evidence that the only satisfactory access to the whole parcel is over that part situated in Massachusetts.

The trial court also found that the granting of the variance would be of benefit to the public interest and not contrary to the spirit of the ordinance. "[T]he locus is specially suited for the proposed use. The overall properties within several miles north and south of the subject property will benefit by the granting of the permit. That area consists primarily of business, recreational, commercial and other light industrial uses. . . . Also significant is the fact that ALL abutters and surrounding property owners have filed their consents to the proposed use as a dog track. . . . It should also be noted that the surrounding area, with minor exceptions, is not residential." The trial court also considered the fact that a referendum on whether a dog track should be located in Nashua received a favorable vote. Also noted was the issuance by the New Hampshire Greyhound Commission of a license to operate a dog track at this location by the defendant Yankee. On the record before us we hold that the trial court could properly find and rule that the decision of the zoning board granting the variance was not unjust or unreasonable or based on errors of law. RSA 31:78; *Glidden v. Nottingham,* 109 N.H. 134, 244 A.2d 430 (1968); *Wentworth Hotel, Inc. v. New Castle,* 112 N.H. 21, 287 A.2d 615 (1972).

We have examined the various evidentiary exceptions taken by the plaintiffs during the trial. One objection pertained to the admission of certain issues of the *Nashua Telegraph,* a newspaper, for the purpose of referring to certain articles therein which could be found relevant on the issues raised as to violations of the right to know law, so-called (RSA ch. 91-A (Supp. 1972)). The fact that the whole newspaper was admitted was not shown to have prejudiced the rights of the plaintiffs. Another pertained to the exclusion of testimony by witness Kudzma, a member of the planning board and also of the zoning board, as to recommendations of one board

to the other and of changes which have occurred in the area of the land in question. The trial court viewed the area with counsel and could ascertain the nature of the use being made. *Gelinas v. Portsmouth,* 97 N.H. 248, 251, 85 A.2d 896, 898 (1952). We cannot say that the trial court abused the discretion evidently intended to be exercised in these cases. RSA 31:82; *Levesque v. Hudson,* 106 N.H. 470, 214 A.2d 553 (1965). There was no duty on the zoning board or the trial court to anticipate that the officials of Tyngsboro who had manifested an intention to grant a permit for parking on the Massachusetts part of the land would not do so. *Luery v. Zoning Bd.,* 150 Conn. 136, 142, 187 A.2d 247, 250 (1962). Hence the court could exclude in its discretion the testimony of witness Basbanes that in his opinion such use was not permitted under the laws of the Commonwealth. If adequate parking was not obtained by Yankee, the grant of the variance could be reviewed and the permit revoked if deemed necessary. Finally we hold that the court could properly admit in evidence a memorandum of law submitted to the zoning board by counsel for defendants. It could be found material in assessing the legality of the actions of the board.

We hold that the trial court properly denied plaintiffs' motion to add additional parties plaintiff. They were not parties to the motion for rehearing and therefore not entitled to become parties to the appeal. *Bourassa v. Keene,* 108 N.H. 261, 234 A.2d 112 (1967); *Hardiman v. Dover,* 111 N.H. 377, 284 A.2d 905 (1971). In view of the result reached it is unnecessary to consider defendants' exceptions.

*Plaintiffs' exceptions overruled.*

GRIFFITH, J., did not sit.