.Merrimack
No. 80-069

ROBERT N. EHRENBERG & a.
d/b/a CLINTON ASSOCIATES

v.

THE CITY OF CONCORD

September 26, 1980

*Sulloway, Hollis & Soden,* of Concord (*Stephen M. Duprey* orally), for the plaintiffs.

*McLane, Graf, Raulerson & Middleton,* of Manchester (*Jack B. Middleton* orally), for the defendant.

PER CURIAM. The main question in this case is whether the Concord City Council exceeded the scope of its jurisdiction by considering growth-related issues in its decision to deny the plaintiffs' petition for granting utilities extensions to a planned unit development project that the Concord Planning Board had previously approved.

The plaintiffs proposed to build a planned unit development (PUD) consisting of twenty-six single-family homes and 217 condominium units on Clinton Street in Concord. The Concord Planning Board conditionally approved the project on April 25, 1979. This approval required the plaintiffs to widen or construct certain streets and sidewalks, procure easements for proposed utilities and agree to a timetable for final board consideration of the project's three phases. The plaintiffs then petitioned the Concord City Council for permission to improve Birch Street and to extend to the project site a certain storm drainage system and certain water mains and sewers. The council referred the petition to the planning board, which, by letter dated July 3, stated that it had reviewed the petition, that the proposed utilities comported with existing city plans and policies, and that the utilities extensions should be approved. As part of its report, the planning

board recommended that the developer bear the entire cost of the proposed water mains and street reconstruction and that the sewer systems be of the gravity type. It made no suggestions as to whether the city should share the cost of the storm drains or the sewers.

On July 9, 1979, the city council met to consider the utilities extensions. It heard and questioned a planning board engineer, the plaintiffs' counsel, and other representatives on such subjects as building density, selling prices, open space, traffic problems, and the physical characteristics and cost of construction of the proposed utilities. The city engineer testified that the utilities extension would actually have a positive impact on existing utilities systems, and that no technical problems would result from the proposed extension. Further, the plaintiffs' counsel pointed out that the developers agreed to pay the entire cost of the utilities extension. Most of the citizens who addressed the council opposed the project. They spoke generally of the undesirability of a PUD on Concord's south end and not of the technical or economic feasibility of the proposed extensions.

At the close of the meeting, just before the vote on the plaintiffs' utilities petition, ten of the twelve voting council members gave reasons for their intended votes. Chief among these reasons were citizen discontent with the project, the belief that the utilities extension might lead to further growth in the south end and thereby adversely affect the quality of life, and the belief that the subject tract might be put to some preferable use. The participating council members then voted unanimously to deny the plaintiffs' petition. The plaintiffs subsequently requested reconsideration, but no council member moved to act on the request so the council did not reconsider its vote of July 9. Even though the planning board had granted only conditional approval, it could not act further on the project in light of the council's vote. The case is thus in the posture of a "final decision" that is ripe for court review. *See Totty v. Grantham Planning Board*, 120 N.H. 388, 415 A.2d 687 (1980).

On August 17, 1979, the plaintiffs petitioned the Merrimack County Superior Court for declaratory judgment and equitable relief. Because the petition sought review of the city's completed action and because no appeal is provided from city council decisions, the Superior Court (*Souter*, J.) treated the petition as a writ of certiorari. The trial court held that, in deciding the fate of the plaintiffs' utilities petition, the city council considered matters outside its jurisdiction. The trial court vacated the council's order

and remanded the matter for further consideration. The city appealed.

▮▮ In reviewing the council's decision, the trial court said it was "limited to deciding whether on the record the City Council 'has acted illegally in respect to jurisdiction, authority or observance of the law . . . or has abused its discretion or acted arbitrarily, unreasonably or capriciously.'" *Slayton v. Personnel Commission*, 117 N.H. 206, 208, 371 A.2d 1159, 1161 (1977). The trial judge said that he had "no jurisdiction to review the soundness of any policy choices which the record and applicable law may disclose to have been within the authority of the City Council to make." The city argues, however, that, though this might be the proper standard for review of administrative agency decisions, certiorari does not lie to review acts of elected legislative bodies like city councils. We disagree. Whether or not a city council generally serves a legislative or administrative function, it is subject to review under a writ of certiorari when it acts quasi-judicially. *See Rhodes v. Town of Woodstock*, 132 Vt. 323, 318 A.2d 170 (1974); 14 C.J.S. *Certiorari* § 17 (1939). In this case the city council acted quasi-judicially because it purported to determine a specific petitioner's right to extend utilities to a certain parcel of land. *Allison v. Washington County*, 24 Or. App. 571, 548 P.2d 188 (1976); *Olsen v. City of Hopkins*, 288 Minn. 25, 178 N.W.2d 719 (1970).

▮ The city's next argument relates to the trial court's consideration of certain evidence. In part, the question on certiorari was whether the council acted within its jurisdiction when it considered certain factors relating to the plaintiffs' petition. Ten of the twelve voting council members gave reasons for their votes. The trial court considered those statements as evidence because they were "the best indications available of the power or jurisdiction which the Councilors intended to exercise, and of the evidentiary bases they claimed in support of such power or jurisdiction." The city contends that the trial court's focus on the council members' statements was error. We do not agree.

The city's position that the reasons given for the vote were irrelevant as long as the vote itself was proper is without merit. This rule applies only if the council was acting legislatively. *Coleman v. School Dist.*, 87 N.H. 465, 183 A. 586 (1936). As we have already said, the vote on the plaintiffs' petition was a quasi-judicial act. Our review of the record convinces us that the trial

court was correct that no better evidence existed than the councilors' statements reciting the reasons for their votes.

We also reject the city's argument that the trial court should have upheld the council's decision as long as there were facts before the council on which it *could* have properly relied. This position ignores the trial court's ruling that the record reflected no sustainable basis for the council's decision in denying the street, sewer, and water improvements.

■ In its final and major argument the city challenges the trial court's ruling that the city council exceeded its jurisdiction in considering those issues that it did consider in reaching its decision to deny the plaintiffs' petition. We uphold the trial court.

■ Certainly a city council has jurisdiction to grant or withhold permission to extend the utilities that were the subject of the plaintiffs' petition. *See* RSA 38:4 (water service), 47:1 and 252:4 (drains and sewers), 234:1 (streets). Further, two of these statutes, RSA 38:4 and 252:4, suggest that the city council enjoys broad jurisdiction to consider a wide range of issues, including cost, in determining whether the subject utilities should be extended. However, a city council severely narrows the range of issues it may consider relative to a utilities extension when it establishes a planning board.

■ ■ RSA 36:29 provides that once a municipality creates a planning board, that board has *exclusive* platting and subdivision jurisdiction. *Levasseur v. Board of Selectmen of Hudson*, 116 N.H. 340, 358 A.2d 665 (1976). The city council retains no general concurrent jurisdiction. The issues that a planning board may consider when it exercises its jurisdiction over a proposed project are fully enumerated in RSA 36:21. The statute expressly states that, among other things, the board "may provide for the harmonious development of the municipality and its environs." Certainly the concerns voiced by the councilors in their stated reasons for their votes—unpopularity of PUDs, possible better use of the land, and adverse effect on quality of life and future growth—are subsumed within the concept of harmonious municipal development. The planning board conditionally approved the plaintiffs' project prior to the petition for the utilities extension. The conditions attached to that approval indicate that the board duly considered questions concerning harmonious community development. The board has exclusive statutory jurisdiction to consider these issues. RSA 36:29. The city council, therefore, cannot reconsider them *de novo*.

The city council apparently considered the issues relating to harmonious municipal development because of its sensitivity to widespread concern over Concord's rapid growth. Though we note the benevolent reason for the council's concern, recent preliminary census data demonstrates that fear about rapid growth in Concord may be unjustified. The total population of Concord has apparently increased only one percent from 30,022 to 30,360 over the last ten years. Concord Monitor, September 17, 1980, at 1.

A reading of RSA ch. 36 as a whole clearly indicates the legislature's intention that planning boards, once created, should serve as the local approving authority for a given project. That intent is not served when a city council, through its power to pass on utilities extensions, exercises a de facto veto on proposed projects that the planning board has already considered and approved. Such a state of affairs would exist in derogation of a statutory framework that requires comprehensive land use planning as the major tool of growth regulation. *Beck v. Town of Raymond*, 118 N.H. 793, 394 A.2d 847 (1978).

We agree that the city council may, in its deliberations on utilities extensions and street alterations, consider those issues not consigned to the planning board's jurisdiction. While we can offer no bright line distinction, a council may not use sewer or utility extensions as a pretext to reconsider growth and development issues in the context of projects that the planning board has previously approved, but must confine itself to the immediate questions whether the proposed utilities extensions are technically feasible and in the city's best financial interest. Assuming appropriate security for the performance of plaintiffs' promises, the latter point is not in issue because the plaintiffs have agreed to absorb all costs. The legislative structure of jurisdiction in this area of the law lacks the clarity of crystal. We would hope that the municipalities as well as the court could be given clearer direction by the General Court.

We affirm both the holding and the order of the lower court.

*Exceptions overruled; affirmed; remanded.*