Grafton
No. 83-129

EUGENE WINSLOW *& a.*

v.

TOWN OF HOLDERNESS PLANNING BOARD *& a.*

July 26, 1984

*Nungesser & Hill,* of Meredith (*Douglas P. Hill* on the brief and orally), for the plaintiffs.

*Deachman Law Office,* of Plymouth (*Ross V. Deachman* on the brief and orally), for the defendant Anthony Raymond.

BROCK, J.    The principal question before us on this appeal is whether the decision of a planning board is rendered invalid by the participation of a board member whose earlier remarks, before he became a board member, indicated that he had prejudged the case. The superior court ruled that the remarks in question were sufficient evidence of prejudgment to disqualify the board member, and

that his participation rendered the board's decision voidable under the rule of *Rollins v. Connor*, 74 N.H. 456, 69 A. 777 (1908). We affirm.

Anthony Raymond, the co-defendant in this case, owns 1.23 acres of land on Squam Lake in Holderness, where he has a residence and also operates a "colony" of twelve seasonal cottages. In early 1980, he submitted to the Holderness Planning Board a proposal for subdividing the land into five leasehold estates. These would encompass the main residence and four of the twelve cottages, with the other eight being removed.

The town of Holderness has no zoning ordinance, but its subdivision regulations impose lot size and frontage requirements which the Raymond proposal did not meet. The planning board accordingly notified abutters of the Raymond property and held public hearings, pursuant to the former RSA 36:23, I(d)–(e) (Supp. 1983) (repealed by Laws 1983, 447:5, IV, and replaced by RSA 676:4, I(d)–(e) (Supp. 1983), eff. Jan. 1, 1984), to determine whether the requirements should be waived in this case.

At a hearing on February 19, 1980, when the board asked residents attending the hearing for their opinions concerning the proposal, Mr. Joseph Mastro spoke in favor of it. Subsequently, Mr. Mastro became a member of the board, and he was instrumental in drafting conditions which the board attached to its approval of the Raymond proposal. On October 23, 1980, he voted with a 6–1 majority of the board to approve the proposal if Raymond complied with the conditions.

The plaintiffs in this case, abutters of the Raymond property, objected to Mr. Mastro's participation in the October 23 vote. They later filed a petition in superior court, pursuant to the former RSA 36:34, I (Supp. 1983) (repealed by Laws 1983, 447:5, IV, and replaced by RSA 677:15 (Supp. 1983), eff. Jan. 1, 1984), seeking to invalidate the board's decision by virtue of Mr. Mastro's participation, and for other reasons not relevant here.

The case was heard by a Master (*Laurence F. Gardner*, Esq.), whose recommendation to reverse the planning board was approved by the Superior Court (*Dalianis*, J.). The defendants' motion for rehearing was granted, and the same master again recommended reversal, finding the board decision invalid both because of Mr. Mastro's participation and because there were insufficient legal grounds for the board's waiver of the town's subdivision requirements. The Superior Court (*Johnson*, J.) approved the recommendation, and the defendant Raymond brought this appeal.

■ Both Mr. Mastro's disqualification and the validity of the

board's decision depend to a large extent on whether the board's action in the instant case is characterized as judicial or quasi-judicial, as opposed to administrative or legislative. This is because it is well settled that a stricter rule must apply in the former situation than in the latter, both in deciding whether to disqualify an official, *Atherton v. Concord*, 109 N.H. 164, 166, 245 A.2d 387, 389 (1968) (citing *Rollins v. Connor*, 74 N.H. at 458, 69 A. at 778), *overruled in part in Totty v. Grantham Planning Board*, 120 N.H. 388, 415 A.2d 687 (1980), and in determining the effect of such a disqualification upon a decision of a municipal body. *Michael v. City of Rochester*, 119 N.H. 734, 736, 407 A.2d 819, 821 (1979).

The rationale for distinguishing between judicial or quasi-judicial action and legislative action was recently summarized by the Supreme Court of Idaho when it held, in overruling prior cases, that a zoning board's review of an application for rezoning was a "quasi-judicial" act:

> "The great deference given true legislative action stems from its high visibility and widely felt impact, on the theory that appropriate remedy can be had at the polls . . . . This rationale is inapposite when applied to a local zoning body's decision as to the fate of an individual's application for rezone. Most voters are unaware or unconcerned that fair dealing and consistent treatment may have been sacrificed in the procedural informality which accompanies action deemed legislative. Only by recognizing the adjudicative nature of these proceedings and by establishing standards for their conduct can the rights of the parties directly affected, whether proponents or opponents of the application, be given protection."

*Cooper v. Bd. of County Com'rs of Ada County*, 614 P.2d 947, 950–51 (Idaho 1980).

■ In 1851, this court defined the concept of judicial action in a disqualification context as follows: "If they [magistrates, boards, etc.] are bound to notify, and hear the parties, and can only decide after weighing and considering such evidence and arguments, as the parties choose to lay before them, their action is judicial." *Sanborn v. Fellows*, 22 N.H. 473, 489 (1851).

■ More recently, we distinguished "a judicial or quasi-judicial act of a municipal body" from "an administrative or legislative act" when we refused to invalidate the decision of a city council, despite a conflict of interest in one member, because "[n]o judicial function was involved, as in the case when an agency decides a dispute

between two or more parties with competing interests." *Michael v. City of Rochester*, 119 N.H. at 736, 407 A.2d at 821.

■ As noted above, the planning board in this case was required by statute to notify all interested parties and to hold public hearings before ruling on the Raymond proposal. The statute reflected the fact that the board's decision would have a disproportionately great impact on Raymond and on owners of land abutting his, but comparatively little impact on other town residents. We conclude that action of this type must be characterized as judicial or quasi-judicial, *see Ehrenberg v. City of Concord*, 120 N.H. 656, 659, 421 A.2d 128, 130 (1980), at least for the purpose of deciding whether the rights of the parties were adequately protected; i.e., whether due process requirements were met. Other jurisdictions have adopted a similar view. *See, e.g., Kaelin v. City of Louisville*, 643 S.W.2d 590, 591 (Ky. 1982); *Kletschka v. LeSueur County Bd. of Com'rs*, 277 N.W.2d 404, 405 (Minn. 1979); *Geiger v. Levco Rte 46 Associates, Ltd.*, 181 N.J. Super. 278, 281, 437 A.2d 336, 337 (1981); *Fasano v. Washington Co. Comm.*, 264 Or. 574, 580–81, 507 P.2d 23, 26–27 (1973); *Zehring v. Bellevue*, 99 Wash.2d 488, 494–95, 663 P.2d 823, 826–27 (1983).

■■ We will accordingly apply stricter rules of fairness in this case than in cases like *Michael v. City of Rochester supra*, where no judicial function was involved. We will, however, refer to the action of a planning board as "quasi-judicial," because such boards need not provide all the procedural safeguards required in a court of law. *Cloutier v. Town of Epping*, 714 F.2d 1184, 1191 (1st Cir. 1983); *Kletschka v. LeSueur County Bd. of Com'rs supra*.

■ We first address the matter of Mr. Mastro's disqualification. Our State Constitution demands that all judges be "as impartial as the lot of humanity will admit." N.H. CONST. pt. I, art. 35. This applies similarly to members of boards acting in a quasi-judicial capacity. *N.H. Milk Dealers' Ass'n v. Milk Control Board*, 107 N.H. 335, 338–39, 222 A.2d 194, 197–98 (1966). The defendant does not contest the master's finding, based on Mr. Mastro's remarks in favor of the Raymond proposal, that Mr. Masto had prejudged the facts of the case before joining the board. "There is no doubt that [this type of prejudgment] constitute[s] a cause for disqualification" from a quasi-judicial function of a board. *N.H. Milk Dealers' Ass'n v. Milk Control Board, supra* at 339, 222 A.2d at 198; *Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d 583, 591 (D.C. Cir. 1970); *see Appeal of Lathrop*, 122 N.H. 262, 265–66, 444 A.2d 505, 506–07 (1982); 3 E. YOKLEY, ZONING LAW AND PRACTICE § 18-8, at 160 (4th ed. 1979).

We would reach the same result if we applied the test established by State law for members of zoning boards of adjustment; that is, that they meet the standards that would be required of jurors in the trial of the same matter. RSA 31:73 (repealed by Laws 1983, 447:5, I, and replaced by RSA 673:14 (Supp. 1983), eff. Jan. 1, 1984). A juror may be disqualified if it appears that he or she is "not indifferent," RSA 500-A:12, II, and there was ample evidence in this case to support such a finding as to Mr. Mastro. Accordingly, the master's ruling that Mr. Mastro was disqualified from acting on the Raymond proposal was proper.

This brings us to the principal question raised in this appeal: whether the master erred in applying to this case the rule that "judicial action by a tribunal one of whose members is disqualified to act is voidable if the disqualified member participates therein, without reference to the fact whether the result is produced by his vote." *Rollins v. Connor*, 74 N.H. at 459, 69 A. at 778.

The *Rollins* court held that mere participation by one disqualified member was sufficient to invalidate the tribunal's decision because it was impossible to estimate the influence one member might have on his associates. *Id.* at 459, 69 A. at 779; *accord, Cinderella Career and Finishing Schools, Inc. v. F.T.C.*, 425 F.2d at 592 (citing *Berkshire Employees Ass'n of Berkshire Knitting Mills v. N.L.R.B.*, 121 F.2d 235, 239 (3d Cir. 1941)). In view of the important property rights involved, and the State constitutional mandate for judicial impartiality, we consider this rationale sufficient to justify application of the *Rollins* rule to this case.

The defendant's argument, that bias of a single board member should not void the board's decision unless his participation produced the decision, rests on this court's *dictum* in *Totty v. Grantham Planning Board*, 120 N.H. at 390, 415 A.2d at 688. There we stated that a planning board's decision would not be deemed invalid absent any indication that participation by disqualified members "determined the outcome." *Id.* We now believe this to be a misstatement of the law.

Of the three cases cited as authority in *Totty*, only one, *Levesque v. Hudson*, 106 N.H. 470, 214 A.2d 553 (1965), can reasonably be read to support the board's position. *Levesque*, like *Totty*, did not involve an actual finding of disqualification. The court chose, nevertheless, to rule that the variance approved by the zoning board in that case was valid because there was no showing that bias or misconduct by the members of the board had affected the result. *Id.* at 475, 214 A.2d at 556–57 (citing *Caldwell v. Yeatman*, 91 N.H. 150, 15 A.2d 252 (1940)).

The *Levesque* court applied the rule used to determine the validity of *jury* decisions when bias is alleged, *see Caldwell v. Yeatman, supra* at 156, 15 A.2d at 256, evidently because the former RSA 31:73, as noted above, applied the same rules of disqualification to zoning board members as applied by law to jurors. *Levesque v. Hudson*, 106 N.H. at 474–75, 214 A.2d at 556–57. We now find this reasoning unpersuasive because the court failed to separate the question of disqualification, which involves an inquiry into an individual board member's impartiality, from the independent question of how such a disqualification should affect the validity of a board's decision. Previous decisions of this court have implicitly recognized this distinction in non-jury cases, even when a "juror" disqualification standard is imposed by law. *See, e.g., Bickford v. Franconia,* 73 N.H. 194, 60 A. 98, 99 (1905).

The use of a similar disqualification standard does not mean that a zoning (or planning) board is the equivalent of a jury for all purposes, particularly when the board, in essence, fills the role of a judge as well. Because we believe that the requirement of impartiality demands application of the *Rollins* rule to planning boards in cases like this one, we overrule *Levesque* and reject the *dictum* in *Totty*, to the extent that they are inconsistent with this opinion.

*Affirmed.*

BATCHELDER, J., did not sit; the others concurred.