## WILMINGTON FEDERATION OF TEACHERS and American Federation of Teachers, AFL–CIO, et al., Defendants below, Appellants,

### v.

### Wendell HOWELL et al., Plaintiffs below, Appellees.

Supreme Court of Delaware.

Submitted Feb. 18, 1978.

Decided June 1, 1977.

---

Stanley W. Balick and Clifford B. Hearn, Jr., of Balick and Hearn, P.A., Wilmington, and Leonard M. Sagot and Thomas W. Jennings, of Teitelman, Sagot, Herring, Jennings & Luber, Philadelphia, Pa., of counsel, for defendants below, appellants.

David S. Swayze, Former City Sol., Perry F. Goldlust, First Asst. City Sol., and Charles H. Toliver, IV, Asst. City Sol., Wilmington, for plaintiffs below, appellees.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this case, we are called upon primarily to consider the effect of the "Sunshine Law" (29 *Del.C.* § 5109)[1] in a teachers' strike situation. The defendant teachers' union and its officers were held to be in contempt of a temporary restraining order and preliminary injunction issued by the Court of Chancery barring the strike. On appeal, they contend, *inter alia,* (1) that the Court of Chancery lacked jurisdiction to entertain the requests for injunctive relief, and (2) that due process violations invalidated both the injunctive and subsequent contempt proceedings. We affirm.

I.

Prior to the strike here involved, the Wilmington Board of Public Education (School Board) and the Wilmington Federation of Teachers (Union) were engaged in collective

---

1. 29 *Del.C.* § 5109 provided:

 "The meetings of all boards and commissions of the State or any political subdivision thereof at which any business is transacted shall be open to the public and to representatives of the press. Nothing contained in this section shall be construed to prohibit executive sessions or conferences of such boards and commissions at which no business is transacted."

 § 5109 was subsequently repealed and superceded by 29 *Del.C.* § 10001 et seq. (effective January 1, 1977). See 60 Del.L.Ch. 641, § 4. Under § 10004 of the new statute:

 "(b) A public body at any meeting may call for an executive session closed to the public . . . for any of the following purposes:

 "(4) Strategy sessions with respect to collective bargaining, pending or potential litigation, when an open meeting would have effect on the bargaining or litigation position of the public body;"

bargaining negotiations for a new teachers' contract to replace the existing agreement scheduled to expire on September 3, 1975. Following the breakdown of those negotiations, the School Board, at a closed executive session held on August 29, decided to begin preparations for legal action to avoid a threatened strike. A regularly scheduled "public" meeting immediately followed the executive session; however, no mention was made there of either the threatened strike or the decision to pursue legal remedies.

In reaction to notice of a Union meeting, scheduled for September 2 for the purpose of conducting a "strike vote," the School Board, that same day, filed a complaint in the Court of Chancery requesting the issuance of a temporary restraining order enjoining the threatened strike. Pending the outcome of the "strike vote" and to afford additional time for service upon the individual defendants, the Chancellor postponed the hearing until later that evening. Following the vote by Union members in favor of strike action, the Chancellor issued a temporary restraining order against the Union, its officers and members, enjoining the strike.

The next day, September 3, after the teachers failed to report for work, the School Board sought the issuance of a Rule to Show Cause why the Union and certain officers should not be held in contempt of the Chancellor's Order. A hearing on that motion was tentatively set for September 8; but on September 4, counsel was notified that the hearing had been moved up to September 5. The Rule was also broadened to include additional Union officers. Defense counsel objected to this change of dates, contending that there was insufficient time to prepare a defense to the contempt charges.

At the September 5 hearing, the Union and five of its officers were found to be in contempt of the restraining order. Fines of $5,000 plus $1,000 per day were levied upon the Union, and fines ranging from $50 to $100 per day were levied upon named officers, all fines to commence on September 8 and 11, respectively. Maximum amounts were set for all fines.

On September 10, a preliminary injunction was issued; the strike, however, continued and the School Board consequently filed a Motion to Increase Sanctions. After a hearing on that motion, the Union and five named officers were found in contempt of the preliminary injunction. The fines upon both the Union and the officers were increased, and the limitations on the maximum amounts were removed. The Union was ultimately fined $30,000, and a total of $7,450 was assessed against the named officers. This appeal is addressed to the fines.

## II.

The defendants' primary contention is that the Court of Chancery lacked jurisdiction over the parties to the injunction proceedings; that, consequently, the civil contempt penalties were invalid. This contention rests upon the premises that the decision of the School Board to seek an anticipatory strike injunction, made at a closed-door executive session, was void because made in violation of the Sunshine Law; that, accordingly, the legal action taken to implement that decision was also void; that, therefore, the Court lacked jurisdiction in the action.

Whether the School Board's closed executive session violated the Sunshine Law we need not decide; for even assuming such violation, we reject the defendants' conclusion that the legal action taken pursuant to that meeting was necessarily invalidated thereby. Invalidation of a public body's decisions is a very serious sanction. In the absence of a specific statutory provision providing therefor, courts are generally wary of imposing such penalty for violation of "open meeting" or "right to know" statutes. See *Sullivan v. Credit River Township,* 299 Minn. 170, 217 N.W.2d 502 (1974); *Carter v. City of Nashua,* 113 N.H. 407, 308 A.2d 847 (1973); *State ex rel. Werlein v. Elamore,* 33 Wis.2d 288, 147 N.W.2d 252 (1967). As one commentator has noted:

"[T]he use of invalidation as a sanction is open to serious question. . . . The

strongest objection to using invalidation as a sanction is that its salutary effect does not seem worth the heavy costs. Both citizens and officials rely on governmental decisions in planning their everyday affairs, and to allow subsequent invalidation of such decisions simply because they were in violation of ambiguously drawn open meeting laws would create a substantial amount of undesirable uncertainty."

Comment, Open Meeting Statutes: The Press Fights For the "Right to Know," 75 Harv.L.Rev. 1199, 1213–14 (1962). We agree with that rationale.

The defendants rely principally upon *Mead School District No. 354 v. Mead Educational Association,* 85 Wash.2d 140, 530 P.2d 302 (1975), a case which they claim is "virtually identical [in facts] to those at bar." There is, however, one determinative factual difference: the Washington "open meeting" statute there involved expressly provided that action taken in derogation was "null and void". If the Delaware Statute contained a similar unequivocal mandate, there would be no room for judicial construction. But it does not; and we are unable to agree with the dictum in *Mead* that invalidation is called for even in the absence of such statute.

We hold that the action of the School Board in seeking an anticipatory strike injunction was not invalidated by the Sunshine Law of this State; that, therefore, the jurisdiction of the Court of Chancery to grant such injunctive relief, and to impose contempt sanctions in connection therewith, is unassailable on this ground.

### III.

■ The defendants also contend that the Court of Chancery prematurely assumed jurisdiction from the commencement of the action. Their argument, basically, is that in the absence of an actual strike there

was no showing of irreparable harm such as to justify injunctive relief.

The defendants' argument ignores two well-established equity principles: (1) that a temporary restraining order may issue to maintain the status quo, *Gimbel v. Signal Companies, Inc.,* Del.Ch., 316 A.2d 599 (1974); and (2) that it is not necessary that a wrong should have been actually committed before a court of equity will interfere, since such requirement, in most cases, would defeat the very purpose for which the relief is being sought. J. High, *The Law of Injunctions* 25 (1905). The real question in this case was whether there was imminent threat of an illegal strike which justified injunctive relief. See *State v. Delaware State Educational Ass'n (DSEA),* Del.Ch., 326 A.2d 868, 873 (1974).

Unquestionably, a teachers' strike was in violation of Delaware Law. See 19 *Del.C.* § 1312;[2] 14 *Del.C.* § 4011(c).[3] *Cf. Board of Educ. of the Marshallton-McKean School District v. Sinclair,* Del.Supr., 373 A.2d 572 (1977). Moreover, the facts in the present case impelled the conclusion that the threat of an illegal teachers' strike was imminent. The School Board's complaint was not filed until the day of the scheduled Union strike vote; more importantly, the restraining order was not issued until that vote was actually held and strike action approved.

We find the Court of Chancery jurisdiction unassailable on this ground.

### IV.

■ The defendants contend that the temporary restraining order and preliminary injunction were vague and overbroad, thereby failing to give adequate notice of the acts prohibited or restrained.

Reasonable notice of prohibited acts, which may form the basis for subsequent contempt action, is mandated both by Court

---

**2.** 19 *Del.C.* § 1312 provides that: "No public employee shall strike while in the performance of his official duties."

**3.** 14 *Del.C.* § 4011 is unequivocally clear in its dictate:

"(c) No public school employee shall strike while in the performance of his official duties. For purposes of this section, the word 'strike' shall be deemed an unexcused absence."

Rule and considerations of due process. See Chancery Court Rule 65(d);[4] *Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). We find those standards were satisfied here. The temporary restraining order and preliminary injunction were unequivocally clear, both as to the prohibitions and required affirmative duties set forth as follows:

"1. That the defendant Union, an unincorporated association its officers, negotiating committee, agents, members and any person acting in concert with any or all of them are hereby *restrained and enjoined . . . from engaging in any form of strike or work stoppage* or any other activity less than full and faithful performances of their duties that would hinder the [School Board] from providing the normal services necessary for the operation of the Wilmington Schools.

"2. That the defendants who are officers of said Union . . . are directed to forthwith instruct its members to perform their job in a full and faithful manner." (Emphasis added)

The decrees in this case can be categorized neither as "unintelligible" nor as "defying comprehension." Compare *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n, supra,* with *United States v. Robinson,* 9th Cir., 449 F.2d 925 (1971).

We find the defendants' contention on this ground to be without merit.

### V.

■■■ As a second alleged due process violation, the defendants argue that the

Chancellor failed to provide their counsel with a reasonable opportunity to prepare for the first contempt hearing. Several factors are asserted in support of this contention: (1) service of the motion and Rule to Show Cause was not made on the individual defendants until the day of the hearing; (2) the School Board's motion, contrary to the requirements of Chancery Court Rule 70(b),[5] failed to specify the facts constituting disobedience; (3) the Rule to Show Cause was broadened to include additional officers not named in the temporary restraining order; and (4) the contempt charge raised numerous legal and factual issues of some complexity.

Whether the Court allowed an adequate time to prepare a possible defense to a contempt charge depends upon the circumstances of the particular case. *United States v. Robinson, supra,* 449 F.2d at 931; and, generally, it is a matter within the "wide discretion" of the Trial Court. *Nilva v. United States,* 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1956). In the instant case, particularly in view of the defendants' failure to make any showing of actual prejudice, we find that discretion was not abused.

Notwithstanding the defendants' protestations to the contrary, the legal issues were neither complex nor compliance factually in dispute. See *United States v. Hawkins,* 9th Cir., 501 F.2d 1029 (1974); *Brotherhood of Locomotive, Firemen and Eng'rs. v. Bangor & Aroostook RR,* 127 U.S.App. D.C. 23, 380 F.2d 570 (1967). Two additional factors are equally significant: the Order was issued on September 2, three days prior to the contempt proceedings; and (2) even after the contempt adjudication, the defendants could have avoided the prospective

**4.** Chancery Court Rule 65(d) provides:

"(d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall describe in reasonable detail, and not by reference to the complaint or other document unless such document is served with the injunction or restraining order, the act or acts to be restrained."

**5.** Chancery Court Rule 70(b) provides in part:

"(b) Contempt and Other Remedies for Disobedience of Court Order. For failure to obey a restraining or injunctive order, or to obey or to perform any order, an attachment may be ordered by the Court upon the filing in the cause of an affidavit showing service on the defendant, or that the defendant has knowledge of the order and setting forth the facts constituting the disobedience."

fines by complying with the restraining Order and returning to work.

Under the threat of irreparable injury to important public interests, prompt judicial action was required. We find that, under all of the circumstances, the defendants were not deprived of a reasonable opportunity to prepare for the contempt hearing.

## VI.

 The defendants contend that the School Board failed to sustain its burden of proving contempt of the temporary restraining order and preliminary injunction. We find this contention to be without merit.

In view of the continued refusal of the Union membership to return to work and the testimony adduced at the hearings regarding the individual defendants' picketing and other actions in support of the strike, we find that the School Board met its burden of establishing contemptuous conduct by a preponderance of the evidence, *City of Wilmington v. American Federation of State, County and Municipal Employees, AFL–CIO Local 320,* Del.Ch., 307 A.2d 820 (1973). The requisite "nexus" between the strike and the defendants' conduct was sufficiently established. See *City of Wilmington v. General Teamsters Local 326,* Del. Supr., 321 A.2d 123 (1974).

## VII.

 Finally, the defendants contend that the fines imposed by the Chancellor for contempt of the temporary restraining order and preliminary injunction were excessive as a matter of law. This contention, likewise, is untenable.

The fashioning of a remedy to compel obedience to an injunctive order, such as setting the amount of a fine, is a matter within the sound discretion of the Court. *City of Wilmington v. American Federation of State, County and Municipal Employees, supra.* We find no abuse of that discretion in the present case. The coercive, rather than punitive, character of the fines here involved is attested by their prospectiveness as well as the ceilings initially placed upon them.

\* \* \*

Affirmed.