IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE JOSEPH A. HURLEY, ESQUIRE | § § § § § § § § § | Nos. 151/152, 2020 <br><br> Court Below – Superior Court of the State of Delaware <br><br> C.A. Nos. S20M-03-003 <br> N20M-03-010 |

Submitted:  May 26, 2021
Decided:  July 28, 2021

Before **VALIHURA**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED**.

Joseph A. Hurley, Esquire, Wilmington, Delaware; *for Appellant Joseph A. Hurley.*

Ryan T. Costa, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; *for Appellee the Superior Court of the State of Delaware.*

**MONTGOMERY-REEVES**, Justice:

This appeal regards a civil contempt order. Appellant Joseph A. Hurley represents Clay Conaway, a former college athlete charged with raping six women. After the case attracted media attention, the Superior Court entered an order prohibiting counsel from making public comments except to the extent permitted under Rule 3.6 of the Delaware Lawyers Rules of Professional Conduct ("DLRPC"). Hurley twice spoke to reporters while the order was in force. The court held that both sets of comments violated the order and found Hurley in civil contempt of court.

On appeal, Hurley argues that the Superior Court erred by holding that there was a substantial likelihood his comments would materially prejudice pending proceedings. For the reasons that follow, this Court affirms the Superior Court's contempt order and denies Hurley's motion for judicial notice.

## I.  RELEVANT FACTS AND PROCEDURAL BACKGROUND[1]

The contempt findings arose out of Hurley's representation of Conaway in connection with multiple rape charges.[2] The case attracted extensive media coverage from local and national outlets.[3]

---

[1] The Court granted an unopposed motion to consolidate these appeals because they present similar and related legal issues. *In re Hurley*, Nos. 151 & 152, 2020 (Del. May 27, 2020) (ORDER).

[2] *State v. Conaway*, 2019 WL 3431594, at *1 (Del. Super. Ct. July 30, 2019).

[3] App. to Opening Br. 44 (No. 152, 2020) (hereafter, "AA_").

In July 2019, the Superior Court granted a motion to sever the charges against Conaway, resulting in six separate proceedings.[4] The first trial was held in September 2019.[5] Conaway was convicted of Rape in the Fourth Degree.[6] After the conviction but before sentencing, the Superior Court entered an order (the "Gag Order") in each of the six criminal cases.[7] The Gag Order prohibited counsel from making public statements except to the extent allowed under Rule 3.6 of the DLRPC:

> 1) The parties in these proceedings have a right to have the merits decided by a fair and impartial jury. Without an order limiting publicity, I find that any comments beyond what is allowed in Rule 3.6 of the Delaware Lawyers' Professional Conduct Rules would cause a substantial likelihood of material prejudice to these rights as well as to the integrity of the criminal justice system;

> 2) Counsel for the State of Delaware (the 'State') and counsel for the Defendant are prohibited from public comment about these matters except as permitted under Rule 3.6 of the Delaware Lawyers' Professional Conduct Rule.[8]

---

[4] *See Conaway*, 2019 WL 3431594, at *1.
[5] AA44.
[6] *Id.*
[7] Ex. A to Appellees' Opp'n to Appellant's Mot. to Take Judicial Notice 1-5 (Nos. 151, 2020 & 152, 2020) (Oct. 2, 2019) (footnote omitted).
[8] *Id.* (footnote omitted).

The Superior Court held a sentencing hearing in November 2019.[9] During the hearing, the prosecution argued that Conaway's lack of remorse was partially explained by his parents' attitude towards the charges and the victims.[10] Defense counsel did not object.[11]

After the sentencing hearing, Hurley gave an interview with a reporter from the News Journal.[12] As reported by the News Journal, Hurley said he was "horrified" by the prosecutor's statements:

> After the hearing, Conaway's attorney Joe Hurley strongly criticized arguments made by [the] state prosecutor . . . in which she pointed to comments made by Conaway and his parents . . . to demonstrate what the state saw as a lack of remorse and possibly learned attitudes.
>
> "Arguing that the defendant is so attractive that girls flock to him and he can't help it . . . This is not a defense to rape. It's an excuse," [the prosecutor] said.
>
> Hurley said he was *"horrified"* that [the prosecutor] implicitly blamed Conaway's parents for his actions.
>
> "There's no excuse for that," Hurley said. "Why would you do that to a parent?"[13]

---

[9] *See* App. to Opening Br. 28-42 (No. 151, 2020) (hereafter, "A_").
[10] A29 to 31, at 2:21-4:3.
[11] *See id.* (showing no objections). Hurley claims that he did not object to these statements because his co-counsel took the lead during the sentencing hearing, and "[t]he . . . protocol with which the Appellant was familiar for several decades was . . . that when there are multiple Attorneys representing a single client, . . . the Attorney who 'has the floor' with regard to the particular point of advocacy . . . is the only Attorney who should address the Court." Opening Br. 6 (No. 151, 2020).
[12] *See* A8.
[13] A8-9 (emphasis added).

4

Approximately two weeks later, the prosecution filed a letter with the Superior Court claiming that Hurley violated the Gag Order.[14] Hurley submitted a letter denying that he violated the order.[15] On December 18, 2019, the Superior Court advised counsel that "[t]he submissions on whether or not Mr. Hurley should be cited from criminal contempt are under advisement."[16] The court also reissued the Gag Order.[17]

In February 2020, the jury in the second criminal case found Conaway guilty of Unlawful Sexual Contact.[18] Shortly afterwards, Hurley gave a videotaped interview with a reporter from the News Journal. During the interview, the reporter asked Hurley how he felt about Conaway being convicted of a misdemeanor charge. Hurley responded, "There was a reasonable basis for it, *even though she put herself there*."[19]

A few days later, the prosecution filed a letter with the Superior Court alleging that Hurley had violated the Gag Order by making several additional statements to the press, including the videotaped interview quoted above.[20] Hurley responded that his comments did not violate the order.[21]

---

[14] A8-11.
[15] A14-17.
[16] A18.
[17] A19-23.
[18] AA49.
[19] *See, e.g.*, AA84, at 18:2-6 (emphasis added).
[20] AA49-51.
[21] AA52-62.

In March 2020, the Superior Court held a teleconference regarding Hurley's purported violations of the Gag Order.[22] There was no dispute that Hurley "kn[ew] or reasonably should [have] know[n]" that both interviews "w[ould] be disseminated by means of public communication."[23] The sole question before the court, therefore, was whether Hurley knew or reasonably should have known that his comments "w[ould] have a substantial likelihood of materially prejudicing an adjudicative proceeding . . . ."[24]

The court held that both of Hurley's statements violated the Gag Order. Regarding the first interview, the court found that Hurley knew or should have known that disparaging the prosecutor weeks before the second trial was scheduled to begin had a substantial likelihood of prejudicing that proceeding:

> [T]his is something that was done close in time to the trial of December 2nd . . . . [T]his would have a substantial likelihood of material[ly] prejudicing a judicial proceeding by creating the impression publicly that the state prosecutor was off the rails and was doing something so horrific to make the prosecutor look really in a terribly demeaning way.[25]

Regarding the second interview, the court found that Hurley knew or should have known that attacking the victim's credibility had a substantial likelihood of prejudicing the four remaining cases:

> I'm looking at, "even though she put herself there." Again, you take this in context to the fact we have had [gag] orders in each

---

[22] AA67-94.
[23] *See* DLRPC 3.6(a).
[24] *See id.*
[25] AA82, at 16:9-22.

of these cases, we have ongoing cases, and we have complaining witnesses in maybe four more cases as well. [The comments to Rule 3.6 provide that] a lawyer cannot attack the credibility . . . of a witness or [the] expected testimony of a witness.

In the way this comes out, it would appear to me to be too much. It is . . . victim blaming. There is no comparative negligence in criminal law. And it is an argument that is painting a better picture for Mr. Conaway . . . to try to get that out in the court of public opinion for the upcoming four trials.

So I am finding that this is a violation.[26]

Thus, the court found Hurley in civil contempt of court and ordered that he deposit $5,000.00 with the court as a remedial measure:

This is civil contempt. This is not criminal contempt. So what I am going to require you to do is pay $5,000 payable to the Sussex County Prothonotary. That money will be held by the Court in one of its accounts. And you will pay this money within ten business days. And upon conclusion of all the trials, all four more if that's what we have, if there are no further issues with respect to the publicity order, then you will get that money back. It's that simple.

The purpose of the order, again, is remedial. You are not being punished. This is not a criminal matter at all. It is designed to provide some incentive to keep things in bounds and to enable the Court to have a process that is fair to getting a jury which is impartial, recognizing the competing interests that we have in play.[27]

Hurley appeals the contempt order.

---

[26] AA89, at 23:7-22.
[27] AA90-91, at 24:9-25:2. *See also* Order of Civil Contempt as to Joseph A. Hurley, Esquire, *State v. Conaway*, S20M-03-003 & N20M-03-010 (Mar. 13, 2020).

7

## II.    STANDARD OF REVIEW

This Court reviews for abuse of discretion a trial court's determination that a party or attorney was in contempt of court.[28]   Factual findings are reviewed for clear error.[29] Constitutional claims are reviewed *de novo*.[30]

## III.    ANALYSIS

The Superior Court has the "inherent authority . . . to impose either civil or criminal sanctions for contempt."[31] The standard of proof required in a civil contempt proceeding is a preponderance of the evidence.[32]   Whether a contempt sanction is civil or remedial depends

---

[28] *See In re Hurley*, 237 A.3d 69, 2020 WL 4333589, at *3 n.22 (Del. July 28, 2020) (TABLE) ("If there is no issue of law, we review the court's sanctions in a contempt proceeding for an abuse of discretion." (citing *In re Ramunno*, 586 A.2d 1202, 1990 WL 255488, at *1 (Del. 1990) (TABLE))); *Harris v. Frank-Harris*, 86 A.2d 1118, 2014 WL 1003588, at *2 (Del. Mar. 7, 2014) (TABLE) ("Husband first argues that the trial court *abused its discretion* in determining that Husband was in contempt of the separation agreement . . . ." (emphasis added)); *Guest v. Guest*, 839 A.2d 665, 2003 WL 22931400, at *2 (Del. Dec. 8, 2003) (TABLE) ("Mother's claim of *abuse of discretion* is unavailing.  In the absence of a transcript of the hearing at which Mother was found in contempt of the Family Court's . . . order . . ., this Court has no adequate basis for evaluating the merits of Mother's claims." (emphasis added) (citing *Slater v. State*, 606 A.2d 1334, 1336–37 (Del. 1992))); *Ramunno v. State*, 1990 WL 140057, at *2 (Del. Sept. 11, 1990) ("The basis for appellant's appeal . . . is the claim that the [Family] Court *abused its discretion* in finding the appellant guilty of criminal contempt and in so finding as a matter of law." (emphasis added)).
[29] *See, e.g.*, *Harris*, 2014 WL 1003588, at *2 ("Findings of fact will be upheld unless clearly erroneous" in an appeal from a contempt sanction (citing *Clark v. Clark*, 47 A.3d 513, 516-17 (Del. 2012))).
[30] *See, e.g.*, *Fink v. State*, 817 A.2d 781, 788 (Del. 2003) ("This Court reviews Constitutional claims *de novo* to determine if the trial court committed an error of law." (citing *Seward v. State*, 723 A.2d 365, 375 (Del. 1999))).
[31] *DiSabatino v. Salicete*, 671 A.2d 1344, 1348 (Del. 1996) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 795 (1987)).
[32] *See, e.g.*, *Wilm. Fed. of Tchrs. v. Howell*, 374 A.2d 832, 838 (Del. 1977) ("[W]e find that the School Board met its burden of establishing contemptuous conduct by a preponderance of the evidence." (citations omitted)).  *C.f. City of Wilm. v. Gen. Teamsters Loc. Union 326*, 321 A.2d 123, 125-26 (Del. 1974) ("The Vice Chancellor had some doubt as to the precise nature of the proceeding,

upon "the character and purpose of the sanction imposed."[33]  "A fine is 'considered civil and remedial' if it either 'coerce[s] the [sanctioned party] into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained."[34]

The Gag Order prohibited counsel from making "public comment . . . except as permitted under Rule 3.6."[35]  Under Rule 3.6, a lawyer is prohibited from making a public statement that the lawyer knows, or reasonably should know, "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter:"

> (a)    A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.[36]

Comment five to Rule 3.6 provides several examples of "subjects which are more likely than not to have a material prejudicial effect on a proceeding, particularly when they refer to . . . a criminal matter."  One of the likely-prejudicial subjects is "the character, credibility, reputation, or criminal record of a . . . witness . . . ."

---

as indicated by his statement to the effect that the evidence was insufficient to convict 'even under the preponderance of evidence rule.'  This is significant because the standard of proof required in a *criminal* contempt proceeding is proof beyond a reasonable doubt." (emphasis added) (citation omitted)).

[33] *DiSabatino*, 671 A.2d at 1349.

[34] *Id.* (most alterations in original) (citing *United Mine Workers v. Bagwell*, 512 U.S. 821 (1994)).

[35] AA48, at ¶ 2.

[36] DLRPC Rule 3.6(a).

9

The Rule 3.6 prohibition is subject to one safe harbor that is relevant to this appeal. Subsection (c) allows a lawyer to make a statement the lawyer reasonably believes necessary "to protect a client from substantial undue prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." Such statements "shall be limited," however, to "information . . . necessary to mitigate the recent adverse publicity." This Opinion refers to the subsection (c) safe harbor as the "Self-Help Safe Harbor."

Notwithstanding Hurley's suggestion to the contrary,[37] it is clear that the Superior Court imposed a civil contempt sanction designed to induce cooperation with the Gag Order, not a punitive criminal sanction.[38] The Superior Court therefore applied the correct burden of proof to its civil contempt finding.[39] Hurley also concedes that he knew or should have known that his comments were likely to be published.[40] The sole questions on appeal, therefore, are whether the Superior Court abused its discretion by holding that Hurley knew, or reasonably should have known, that his public comments had a substantial likelihood of

---

[37] *See* Opening Br. 10 (No. 151, 2020) (relying on cases addressing *criminal* contempt sanctions to suggest that the clear and convincing evidence standard applies to the Superior Court's determination in this case).

[38] *See* AA90-91, at 24:9-25:2.

[39] *See, e.g.*, *Howell*, 374 A.2d at 838. *C.f. In re Hurley*, 2020 WL 4333589, at *4 (holding that the trial court found Hurley in criminal, rather than civil, contempt of court because the monetary sanction was punitive).

[40] *See, e.g.*, Opening Br. 7 (No 152, 2020) ("It is clear, without dispute, that the Appellant recognized public dissemination that may occur should remarks be considered newsworthy. This is not an issue in the case.").

materially prejudicing pending proceedings; and if not, whether Hurley's comments were protected by the Self-Help Safe Harbor.

### A. The Superior Court Did Not Abuse Its Discretion by Holding that Hurley's Comment Regarding the Prosecutor Violated the Gag Order

After the sentencing hearing in the first trial, Hurley told a reporter that he was "horrified" by the prosecutor's comments.[41] The Superior Court found that Hurley knew or should have known there was a substantial likelihood that his comment would materially prejudice upcoming proceedings "by creating the impression . . . that the state prosecutor was off the rails . . . and doing something . . . horrific . . . ."[42] The court noted that Hurley knew when he made this comment that the second trial was scheduled to begin soon and that the prosecutor would be involved in the second trial.[43]

Hurley's main argument on appeal is that he did not violate the Gag Order because there was not a substantial likelihood that his comments could cause material prejudice to pending proceedings. Hurley contends that given the extensive media attention, his comments could not change the hearts and minds of prospective jurors. The Court rejects this argument. The extensive media coverage would likely increase the risk of harm by broadcasting problematic comments to a wider audience. Hurley does not explain how

---

[41] A8-9.

[42] AA82, at 16:19-22.

[43] *See id.*

11

existing press coverage mitigated his comments; and a lawyer's "statements are likely to be received as especially authoritative."[44]

More fundamentally, Hurley does not grapple with the Superior Court's holding that disparaging the prosecutor weeks before the second trial was scheduled to begin would materially prejudice pending proceedings. Hurley also undermines his own position by claiming that he spoke with the reporter to protect Conaway from undue prejudice.[45] It is difficult to understand how Hurley could have simultaneously thought his comments would be helpful *and* that his comments would not influence potential jurors. Thus, none of Hurley's arguments show that the Superior Court relied on clearly erroneous factual findings or abused its discretion in holding that there was a substantial likelihood that his comments would materially prejudice pending proceedings.

Next, Hurley argues that his comment qualified for the Self-Help Safe Harbor.[46] This argument also fails. It was not reasonably necessary for Hurley to express "horror" to set the record straight. Hurley could have given a narrower denial focusing on the facts the prosecutor supposedly got wrong. Further, Hurley did not make his comment in response to adverse "publicity." Rather, he made his comment in response to the prosecutor's statements in the courtroom. The Self-Help Safe Harbor is not designed to give lawyers an alternative to making timely objections. It is designed to allow lawyers to exercise self-help

---

[44] *See Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1074 (1991) (citations omitted).
[45] *See* Opening Br. 18-19 (No. 151, 2020).
[46] *Id.*

in response to comments made outside the courtroom. Hurley also places undue emphasis on protecting the parents' reputation.[47] Setting aside whether the prosecutor's statements were advisable, the Self-Help Safe Harbor allows a lawyer to make public comments to protect their *client*, not third-parties. Thus, much of Hurley's argument misses the mark.[48]

Finally, Hurley appears to suggest that his statements were protected under the First Amendment of the United States Constitution. In *Gentile*, the United States Supreme Court upheld the substantial-likelihood-of-material-prejudice standard because lawyers are "key participants in the criminal justice system," with "special access to information," whose "extrajudicial statements pose a threat to the fairness of a pending proceeding."[49] Hurley's passing reference to the First Amendment does not explain how the Superior Court erred in finding that his comments created a substantial likelihood of material prejudice.

Accordingly, this Court affirms the Superior Court's finding that Hurley's public comments regarding the prosecutor violated the Gag Order.

### B. The Superior Court Did Not Abuse Its Discretion by Finding that Hurley's Victim-Blaming Comment Violated the Gag Order

After Conaway was convicted at the second trial, Hurley told a reporter in a videotaped interview that "[t]here was a reasonable basis" for the verdict, "even though [the

---

[47] *Id.* at 12.
[48] *See, e.g., id.*
[49] 501 U.S. at 1074 (first citing *In re Hinds*, 449 A.2d 483, 496 (N.J. 1982); and then citing *In re Rachmiel*, 449 A.2d 505, 511 (N.J. 1982)).

13

victim] put herself there."[50] The Superior Court held that Hurley knew or should have known there was a substantial likelihood that his comment would materially prejudice upcoming proceedings by undermining the credibility of the complaining witnesses[51] and by "painting a better picture for Mr. Conaway . . . in the court of public opinion."[52] The court also noted that Hurley's statement ran afoul of the comments to Rule 3.6, which "provide that a lawyer cannot attack the credibility . . . of a witness."[53]

Hurley argues that the Superior Court erred by failing to consider the context of his statement, including observing his demeanor and the extensive media coverage surrounding the Conaway prosecution.[54] Hurley also makes a passing reference to freedom of speech protections under the First Amendment of the United States Constitution.

The Court rejects Hurley's arguments. Hurley's core complaint seems to be that the Superior Court would have made a different decision if it had watched the videotaped interview. This is incorrect. The record shows that the court watched the video multiple times. The court also offered to play the video during the contempt hearing, but Hurley refused.[55] Hurley's argument therefore boils down to an assertion that the court could have

---

[50] *See, e.g.*, AA84, at 18:5-6.
[51] AA89, at 23:6-22.
[52] *Id.* at 23:18-20.
[53] DLRPC Rule 3.6 cmnt. 5.
[54] *See* Opening Br. 8-10 (No. 152, 2020).
[55] *See* AA83, at 17:16-23 ("THE COURT: We have the interview and *I have looked at the interview more than once*. . . . I have the video here if you would like me to play it. Is there any need to do that? . . . MR HURLEY: I'm not asking for that." (emphasis added)).

14

viewed the evidence differently. This falls far short of demonstrating that the Superior Court relied on clearly erroneous factual findings.[56]

Hurley's other arguments fare no better. The presence of extensive media coverage increases the risk of prejudice for the reasons stated above. Likewise, Hurley's passing reference to freedom of speech protections does not change the analysis. As noted above, the United States Supreme Court has upheld the substantial-likelihood-of-material-prejudice standard.[57] And here, the Superior Court properly applied the substantial-likelihood-of-material-prejudice standard. Accordingly, this Court affirms the Superior Court's finding that Hurley's public comments regarding the victim violated the Gag Order.

## C. This Court Denies Hurley's Motion for Judicial Notice

Hurley has asked the Court to take judicial notice of several publications regarding the Conaway prosecution.[58] The reasoning of this motion is unclear. As best the Court can decipher, Hurley seeks to admit these articles to show that his comments were not widely disseminated.[59] But there is no dispute that Hurley's remarks were published,[60] and Hurley concedes he knew that his comments were likely to be published when he spoke to the

---

[56] *See, e.g.*, *Banther v. State*, 823 A.2d 467, 483 (Del. 2003).

[57] *Gentile*, 501 U.S. at 1074 (first citing *In re Hinds*, 449 A.2d 483, 496 (N.J. 1982); and then citing *In re Rachmiel*, 449 A.2d 505, 511 (N.J. 1982)).

[58] Appellant's Am. Mot. Seeking the Court to Take Judicial Notice ¶¶ A-D (No. 152, 2020) (Jan. 26, 2021).

[59] *See id.* at ¶ C.

[60] *See, e.g.*, A8-9 (recounting Hurley's published remarks disparaging the prosecutor); AA89, at 23:7-22 (recounting Hurley's published victim-blaming comments).

reporters.[61]  And Hurley's motion offers no explanation regarding why the extent to which his comments were not more broadly published would change the outcome of this appeal. For these reasons, the Court denies Hurley's motion for judicial notice.

## IV.  CONCLUSION

For the reasons provided above, this Court AFFIRMS the judgment of the Superior Court as reflected in its March 13, 2020 order of civil contempt.  Hurley's motion for judicial notice is DENIED.

---

[61] *See, e.g.*, Opening Br. 7 (No. 152, 2020) ("It is clear, without dispute, that the Appellant recognized public dissemination that may occur should remarks be considered newsworthy.  This is not an issue in the case.").